**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Miguel GONZALES, Defendant–
Appellant.**

**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Orlenis HERNANDEZ–DIAZ,
Defendant–Appellant.**

**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Luis LEON, Defendant–Appellant.**

**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Mario PEREZ, Defendant–Appellant.**

Nos. 93–2292, 93–2293, 93–
2294 and 93–2295.

United States Court of Appeals,
Tenth Circuit.

Aug. 30, 1995.

Edward O. Bustamante, Albuquerque, NM, for defendant-appellant Miguel Gonzales (93–2292).

Angela Arellanes, Albuquerque, NM, for defendant-appellant Orlenis Hernandez–Diaz (93–2293).

Susan L. Foreman, Assistant Federal Public Defender (Michael G. Katz, Federal Public Defender, with her on the brief), Denver, CO, for defendant-appellant Luis Leon (93–2294).

Roberto Albertorio, Albuquerque, NM, for defendant-appellant Mario Perez (93–2295).

Presiliano Torrez, Assistant United States Attorney (John J. Kelly, United States Attorney, and Thomas L. English, Assistant United States Attorney, on the briefs), Albuquerque, NM, for plaintiff-appellee.

Before HENRY and McKAY, Circuit Judges, and SHADUR,[*] Senior District Judge.

McKAY, Circuit Judge.

## STATEMENT OF THE FACTS

This case began as a "reverse sting" operation by the Albuquerque Police Department. In a reverse sting, police officers assume the role of drug dealers in order to infiltrate drug rings. On April 22, 1991, Officer James Torres of the Albuquerque Police Department met a confidential informant and Appellant Leon at the Kettle Restaurant in Albuquerque. (Tr. at 20–21) The purpose of the meeting was to arrange the sale of 100 pounds of marijuana to Mr. Leon and his "money people" for eventual distribution in Miami, Florida. (Tr. at 22) Mr. Leon did not identify his "money people" to Officer Torres during their initial meeting, but did say they were coming to Albuquerque via Dallas, Texas. (Tr. at 24) Later that same day, Appellant Leon contacted Officer Torres and said his "people" had arrived and wanted to see a sample of the marijuana. (Tr. at 25) At approximately 6:30 p.m. on April 22, Officer Torres met Luis Leon at a Circle K in Albuquerque and was introduced to two of Mr. Leon's co-conspirators, Miguel Gonzales and Orlenis Hernandez–Diaz. (Tr. at 26) Detective Gloria later joined Officer Torres and the three appellants at the Circle K and showed the appellants a 35–pound bale of marijuana that was in the trunk of his undercover vehicle. (Tr. at 29) After examining the marijuana, the appellants agreed to buy 100 pounds of marijuana for $60,000. The transaction was to occur the next day at 9:00 a.m. (Tr. at 3, 33)

At approximately 9:30 a.m. the next morning, Officer Torres met Mr. Leon and Mr. Gonzales at the Circle K. Mr. Leon asked whether Officer Torres had the marijuana with him, and Officer Torres replied that he did not because he wanted to see the money first. (Tr. at 34) Mr. Leon took Officer Torres to his apartment to view the purchase money. (Tr. at 34–35) When he entered the apartment, Officer Torres met co-conspirator Mr. Perez. Messrs. Perez, Hernandez–Diaz, and Leon were all in the apartment at that time. (Tr. at 35) The three dealers wanted to see the marijuana again before handing over the $60,000, so Officer Torres took Mr. Leon back to the Circle K so he could again view the drugs. (Tr. at 36) Officer Torres telephoned Detective Gloria and instructed him to bring the marijuana to the Circle K. Upon reaching the store, Appellant Leon once more examined the drugs, then took Officer Torres back to his apartment to complete the transaction. (Tr. at 36) On the way back to the apartment, Mr. Leon told Officer Torres to circle the area to make sure there were no police cars in the vicinity. The officer did as he was instructed and passed two marked patrol cars on the way. Mr. Leon became concerned and asked Officer Torres if he were a police officer. Officer Torres replied that he was not and that he just wanted to complete the deal.

After finishing the circle, Officer Torres pulled into the parking lot below Appellant Leon's apartment and instructed Detective Gloria to park his vehicle east of a Ford Bronco into which the marijuana would be loaded. (Tr. at 37) Once in the parking lot, Appellants Gonzales and Leon again said they wanted to see the marijuana, so all four of them—Officer Torres, Detective Gloria, Appellant Gonzales, and Appellant Leon—went to the back of the undercover vehicle to view the 100 pounds of marijuana. (Tr. at 39) Then, Appellant Leon and Officer Torres

[*] Honorable Milton I. Shadur, Senior United States District Judge for the Northern District of Illinois, sitting by designation.

went upstairs to Mr. Leon's apartment to count the money.

Once inside the apartment, Mr. Hernandez–Diaz pulled a gun on Officer Torres. Officer Torres raised his hands and pleaded with Mr. Hernandez–Diaz to spare his life. Mr. Leon, who was standing next to Officer Torres, also raised his hands and asked what was going on. Mr. Hernandez–Diaz then relieved Mr. Leon of his weapon, a handgun which was concealed in his waistband. Officer Torres was taken hostage at gunpoint by Mr. Hernandez–Diaz, who apparently intended to steal the marijuana without paying for it. Mr. Hernandez–Diaz placed a cushion against the officer's body and placed the gun against it, telling him to be quiet or he would be killed. While Mr. Hernandez–Diaz held the officer at gunpoint, Appellant Perez patted him down and took his handgun. (Tr. at 53) Officer Torres was then taken into an adjacent bedroom and his hands and feet were taped together and his mouth was taped shut.

It was at this point that the other officers came running up the stairs, kicked in the door, and arrested Appellants Hernandez and Leon. (Tr. at 52) Appellant Perez fled, but was later captured.

As Officer Torres was being held at gunpoint upstairs, Detective Gloria likewise was being held at gunpoint by Appellant Gonzales downstairs. (Tr. at 321) After seeing Officer Torres and Mr. Leon go to the apartment, Mr. Gonzales tapped on the window of Detective Gloria's car and asked to see the marijuana again. Once the trunk was open, Mr. Gonzales pulled out a handgun and pointed it at Detective Gloria, ordering him to go upstairs. (Tr. at 321) Detective Gloria ignored the orders and tried to slam the trunk shut. (Tr. at 321) He then raised his hands in the air, enabling Mr. Gonzales to see the gun in his holster. As Mr. Gonzales reached forward and took the gun, a siren went off. Mr. Gonzales immediately fled the area. (Tr. at 322) Detective Gloria then joined the other officers who were running upstairs to rescue Officer Torres.

## STATEMENT OF THE CASE

■ The defendants were all convicted of conspiracy to possess and distribute marijuana, 21 U.S.C. § 846 and 18 U.S.C. § 2; possession with intent to distribute marijuana, 21 U.S.C. §§ 841(a)(1) and (b)(1)(D); and the use or carrying of a firearm during a drug trafficking crime, 18 U.S.C. § 924(c)(1). They received sentences ranging from 120 to 147 months. In addition, the defendants had previously received substantial state sentences for convictions arising out of the same conduct. The defendants, aside from Mr. Perez, have not directly challenged their conspiracy or firearm convictions, but all have appealed their convictions for possession. They also each raise several other issues. Because common issues predominated, the appeals of Messrs. Gonzales, Hernandez–Diaz, and Perez were consolidated on appeal. Because Mr. Leon's appeal also raises common issues, we have addressed his appeal together with those of his co-conspirators in this opinion. We will first address the common issues and then turn to the individual issues.[1]

## DISCUSSION

■ All of the defendants were given three level increases in their sentences pursuant to U.S.S.G. § 3a1.2(b). This sentence enhancement applies when, "during the course of the offense ... the defendant or a person for whose conduct the defendant is otherwise accountable, knowing or having

---

1. As a threshold matter, the government suggests that we do not have jurisdiction over the appeal of one of the defendants, Mr. Gonzales, because he did not file his appeal in a timely fashion. Upon receipt of the admittedly late appeal, we remanded to the district court for a determination of whether counsel or Mr. Gonzales could demonstrate excusable neglect for his failure. The district court found excusable neglect and granted appellant's retroactive Rule 4(b) Motion for Extension of Time to file his appeal. We cannot say that this was an abuse of discretion because there was a genuine issue about the correctness of the original judgment, which was later amended. While the amendment to the original judgment was technical in nature and perhaps did not qualify as a new judgment for purposes of the date for filing an appeal, the confusion surrounding the issue was at least substantial enough to create excusable neglect. Thus, we do have jurisdiction over Mr. Gonzales' appeal as well as those of his co-defendants.

reasonable cause to believe that a person was a law enforcement ... officer, assaulted such officer in a manner creating a substantial risk of serious bodily injury." *Id.* § 3a1.2(b). The appellants concede that they assaulted an officer so as to create a substantial risk of serious bodily injury. Nevertheless, the appellants claim that the application of this enhancement was in error because they did not know or have reasonable cause to believe that the person(s) assaulted were police officers.

The government points to several facts which it contends demonstrate that the appellants reasonably should have known that they were dealing with police officers: first, the fact that Officer Torres and Detective Gloria were carrying guns; second, the presence of marked police cars in the vicinity; and, third, the fact that the appellants themselves expressed suspicions that Officer Torres was a cop. Taken together, we conclude that these facts are insufficient to support the application of this enhancement.

The fact that Officer Torres and Detective Gloria carried weapons would not provide a basis for the reasonable drug dealer to believe that he was dealing with police officers. We have frequently noted in other contexts that firearms are a practically ubiquitous accoutrement of those in the drug trafficking trade. Indeed, each of the drug dealers in this case carried a firearm; there were no unarmed persons at the scene. Thus, the fact that the officers were armed does not in any way label them as police officers.

Similarly, the presence of police cars in the neighborhood did not provide a reasonable basis for the defendants to conclude that they were dealing with police officers. Police cars are a common sight on city streets everywhere, particularly in areas of high crime. There was absolutely nothing in particular that would cause the appellants to link Officer Torres and Detective Gloria with the marked police cars.

Finally, the government makes much of the fact that the appellants voiced suspicions about whether Officer Torres might be a police officer and in fact asked him repeatedly if he were. What the government ignores is that Officer Torres successfully allayed their suspicions and convinced the appellants that he was a legitimate criminal. Furthermore, it is only natural for those engaged in highly illegal activities to be concerned about whether they are involved in a sting. Thus, mere suspicion based on speculation alone does not equate to "reasonable cause to believe." *See United States v. Castillo*, 924 F.2d 1227, 1236 (2d Cir.1991). The success of the sting operation in this case itself demonstrates that the appellants were convinced that Officer Torres and Detective Gloria were criminals, not cops.

■ The appellants also challenge the sufficiency of the evidence supporting their convictions for possession of marijuana with intent to distribute. In order to convict a defendant of 21 U.S.C. § 841(a), the government must prove the following elements beyond a reasonable doubt: (1) the defendant knowingly possessed the illegal drug, and (2) the defendant possessed the drug with the specific intent to distribute it. *United States v. Gay*, 774 F.2d 368, 372 (10th Cir.1985). We must sustain the conviction if the evidence, "taken in the light most favorable to the government," would allow a fact finder to find guilt beyond a reasonable doubt. *Id.* There is no question that the appellants had the intent to distribute drugs; however, the appellants deny that they ever possessed the drugs in question.

■ The government concedes that the defendants did not actually possess the drugs in this case, but contends that the test for constructive possession has been satisfied. It is not disputed that possession of drugs may be either actual or constructive and that constructive possession may be established by circumstantial evidence if the government shows a sufficient nexus between the defendant and the drugs. *United States v. Culpepper*, 834 F.2d 879, 881–82 (10th Cir.1987). Generally, a person has constructive possession of narcotics if she or he knowingly has ownership, dominion, or control over the drugs or the premises where they are found. *United States v. Parrish*, 925 F.2d 1293, 1296 (10th Cir.1991).

■ The government theorizes that Mr. Gonzales exercised dominion and control over

the drugs when he pulled the gun on Detective Gloria because he "could have taken the car keys and driven away, killed or wounded Officer Gloria and taken the marijuana or simply have picked up the marijuana and walked away." Aple's Brief at 31. However, the fact remains that none of these possibilities occurred. Mr. Gonzales never exercised dominion and control over the marijuana because he never had the keys and because Detective Gloria, by attempting to slam the trunk, made it clear that he was not relinquishing possession of the drugs.[2] Nor did Mr. Gonzales exercise dominion and control of the premises where the drugs were found: the parking lot was under surveillance by undercover officers, the area was not secured, and Mr. Gonzales had no power to exclude anyone from the area.

We conclude that there was insufficient evidence for a reasonable jury to conclude that Mr. Gonzales had constructive possession of the drugs. His conviction on this count must be reversed. Because the other defendants were convicted for aiding and abetting Mr. Gonzales, their convictions for this crime must also be overturned.

All of the appellants received five-year sentences for using a firearm during a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1). While the appellants do not dispute the sufficiency of the conviction, three of the appellants (Messrs. Gonzales, Perez, and Hernandez–Diaz) claim that the district court erred in ruling that they are to serve their sentence for this crime consecutive to the completion of their state sentences arising out of the same conduct. The question we must answer is whether § 924(c)'s mandatory five-year sentence may run concurrently with a previously imposed *state* sentence that a defendant *has already begun to serve.* We hold that it can.

At sentencing, the district court ruled that each defendant's sentence for the underlying substantive federal offenses should run concurrently with the sentence previously imposed by the state court for the identical offenses. The district court then ordered

that the five-year term imposed under § 924(c) should run consecutively to both the federal *and* the state charges, obviously reading § 924(c) as barring the imposition of a sentence concurrent with any prior state sentence. In so ruling, the district court joined good company—every circuit to have considered the issue has held that § 924(c)'s plain language prohibits sentences imposed under that statute from running concurrently with state sentences, although most of these opinions have not been published. *See, e.g., United States v. McLymont,* 45 F.3d 400, 401–02 (11th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 1723, 131 L.Ed.2d 581 (1995); *United States v. Gibson,* 23 F.3d 403 (table), 1994 WL 191609, at *2 (4th Cir.1994); *United States v. Ospina,* 18 F.3d 1332, 1335–36 (6th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 2721, 129 L.Ed.2d 846 (1994); *United States v. Hoard,* 12 F.3d 1101 (table) 1993 WL 473690, at *8–9 (7th Cir.1993); *United States v. Maillett,* 967 F.2d 594 (table), 1992 WL 144713, at *1 (9th Cir.1992).

■ In general, the choice between imposing concurrent and consecutive prison terms is left to the sound discretion of the sentencing court. *See United States v. Kalady,* 941 F.2d 1090, 1097–98 (10th Cir.1991). Hence, we ordinarily review such sentences for an abuse of discretion. *See id.* But where, as here, a district court's leeway is cabined by statute, we review that court's construction of the statute *de novo. United States v. Hall,* 20 F.3d 1084, 1088 (10th Cir.1994). We also review *de novo* a district court's reading of the Sentencing Guidelines. *United States v. Gacnik,* 50 F.3d 848, 852 (10th Cir.1995).

■ In interpreting a statute, we begin with the language of the statute itself. *Kaiser Aluminum & Chem. Corp. v. Bonjorno,* 494 U.S. 827, 835, 110 S.Ct. 1570, 1575, 108 L.Ed.2d 842 (1990). However, where a literal reading of the statutory language would produce an absurd result—particularly one clearly not contemplated by Congress— courts will adopt a more sensible statutory construction. This principle was announced

---

**2.** We note, moreover, that Mr. Gonzales fled *immediately* after Detective Gloria slammed the trunk.

more than a century ago in *Church of the Holy Trinity v. United States*, 143 U.S. 457, 459, 12 S.Ct. 511, 512, 36 L.Ed. 226 (1892), and is still alive and well today:

> Where the literal reading of a statutory term would "compel an odd result," we must search for other evidence of congressional intent to lend the term its proper scope.... Looking beyond the naked text for guidance is perfectly proper when the result it apparently decrees is difficult to fathom or where it seems inconsistent with Congress' intention.

*Public Citizen v. United States Dep't of Justice*, 491 U.S. 440, 454–55, 109 S.Ct. 2558, 2567, 105 L.Ed.2d 377 (1989) (citations omitted); *accord In re Investment Bankers, Inc.*, 4 F.3d 1556, 1564 (10th Cir.1993), *cert. denied*, ⎯ U.S. ⎯, 114 S.Ct. 1061, 127 L.Ed.2d 381 (1994). As the ensuing discussion reflects, this concept controls the application of § 924(c) to these defendants, requiring us to go beyond the literal language of the code section and "'venture into the thicket of legislative history.'" *Unruh v. Rushville State Bank*, 987 F.2d 1506, 1508 (10th Cir.1993) (citation omitted).

■ The following language of § 924(c)(1) was in effect at the time of the relevant offenses:

> Whoever, during and in relation to any ... drug trafficking crime ... for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime ..., be sentenced to imprisonment for five years.... Notwithstanding any other provision of law, the court shall not place on probation or suspend the sentence of any person convicted of a violation of this subsection, *nor shall the term of imprisonment imposed under this subsection run concurrently with any other term of imprisonment including that imposed for the crime of violence or drug trafficking crime in which the firearm was used or carried.*

18 U.S.C. § 924(c)(1) (1988) (emphasis added). There are two plausible ways in which the phrase "any other term of imprisonment" could be read. Taken most literally, "any other term of imprisonment" would encompass not only all federal sentences but state sentences as well. However, since this is a federal statute, with presumed concern for the treatment of federal crimes, the language could be read more narrowly to apply only to federal sentences, excluding state sentences from its scope. The principal clue to the proper choice between these alternatives follows from this question: Why did Congress choose to use the statute's roundabout locution, which negates the imposition of a concurrent sentence, rather than to employ more conventional and straightforward declaratory language to require consecutive sentences? For example, Congress might have said:

> Any term of imprisonment imposed under this subsection shall run consecutively to any other term of imprisonment including that imposed for the crime in which the firearm was used or carried.[3]

The answer to this question may be found in Congress' statement of its intention in enacting the 1984 amendment to § 924(c) (the version we are concerned with here). The Senate Report that accompanied the 1984 amendment to § 924(c) reads:

> In either case, the defendant could not be given a suspended or probationary sentence, nor could any sentence under the revised subsection be made to run concurrently with that for the predicate crime or with that for any other offense. *In addition, the Committee intends that the mandatory sentence under the revised subsection 924(c) be served prior to the start of the sentence for the underlying or any other offense.*

S.Rep. No. 225, 98th Cong., 2d Sess. 313–14, *reprinted in* 1984 U.S.C.C.A.N. 3182, 3492

---

**3.** When Congress intended to require that one prison term follow another sentence, it knew how to say so. *See, e.g.,* 18 U.S.C. § 3146(b)(2) (1988) ("A term of imprisonment imposed under this section shall be consecutive to the sentence of imprisonment for any other offense."). Congress' omission of a similarly straightforward directive in § 924(c) thus appears to be a deliberate choice rather than a mere oversight. *Compare Custis v. United States*, ⎯ U.S. ⎯, ⎯, 114 S.Ct. 1732, 1736, 128 L.Ed.2d 517 (1994).

(emphasis added).[4]

Both Courts of Appeals that have been aware of this stated congressional purpose have honored it. *Jackson v. United States,* 976 F.2d 679, 682 (11th Cir.1992) (per curiam); *Rodger v. White,* 907 F.2d 151 (table), 1990 WL 95624, at *4 (6th Cir.1990). One of our own district courts has also acknowledged this legislative intention. *Johnson v. Matthews,* 751 F.Supp. 190, 192 (D.Kan. 1990). Although several of our own earlier opinions referred in dicta to § 924(c) sentences as being served "consecutively to" (that is, after) other substantive-offense sentences, these opinions were apparently issued without an awareness of the express congressional intent that we have, of necessity, discovered in this case. *See, e.g., United States v. Moore,* 958 F.2d 310, 312 (10th Cir.1992); *United States v. Lanzi,* 933 F.2d 824, 826 (10th Cir.1991); *Chalan,* 812 F.2d at 1315.[5] Furthermore, none of these opinions dealt with the anomaly that follows from combining the incorrect "consecutive to" approach with an all-inclusive reading of "any other term of imprisonment."

The result for these defendants of such a combined reading, under which the five-year sentence on the § 924(c) gun count would have to *follow* a previously imposed state sentence and would have to *precede* a corresponding federal sentence, would be:

| Sentences in Years: | State | § 924(c) | Federal | Total |
|---|---|---|---|---|
| Hernandez–Diaz: | 14.5 | 5 | 5 | 24.5 |
| Gonzales: | 13 | 5 | 5 | 23 |
| Perez: | 17 | 5 | 7.25 | 29.25 |

In each instance this approach would more than double the custodial price that Congress and the Guidelines have set for committing the total criminal conduct engaged in by these defendants.

The adoption of a reading that § 924(c)'s prohibition against concurrent sentences refers only to federal sentences does not at all depreciate the severity of the crimes involved. Under such a reading, in which the gun-charge sentence would begin immediately upon the district court's imposition of sentence (thus running concurrently with the pre-existing state sentence), and would be followed immediately by the other federal sentences for any other substantive offenses, every defendant would be required to serve *at least* the combined term for the gun offense and the underlying federal offense. Where, as here, a state sovereign has previously viewed the same criminal conduct more seriously than Congress and the Sentencing Commission have decreed, the defendant would therefore have to remain in prison until the longer state sentence had expired. Mr. Hernandez–Diaz, for example, would have to serve out any remaining portion of his fourteen-and-one-half-year state sentence at the end of the custodial portion of his aggregate ten-year federal sentence.

Our conclusion that the phrase "any other offense" encompasses only federal offenses is required if we are to follow Congress' stated intent that § 924(c) sentences be served prior to "any other offense," for if a defendant is sentenced in state court first, there is no way in which a later-sentencing federal court can cause the mandatory five-year § 924(c) sentence to be served before a state sentence that is already being served. Our interpretation is also entirely consistent with the Guidelines. Guideline § 5G1.3(b), which is applicable where, as here, a defendant is prosecuted in both federal and state court for the same conduct, states:

> If ... the undischarged term of imprisonment resulted from offense(s) that have

4. Committee reports accompanying ultimately enacted bills are a favored authoritative source of legislative history. *Thornburg v. Gingles,* 478 U.S. 30, 43 n. 7, 106 S.Ct. 2752, 2762 n. 7, 92 L.Ed.2d 25 (1986). While we have, on more than one occasion, cited this Senate Report in addressing the interpretation of § 924(c), *see, e.g., United States v. Overstreet,* 40 F.3d 1090, 1094–95 (10th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1970, 131 L.Ed.2d 859 (1995); *United States v. Chalan,* 812 F.2d 1302, 1315–16 (10th Cir.1987), we have not previously visited this particular passage.

5. This unawareness also apparently extended to the Sentencing Commission. Application Note 1 to § 2k2.4 refers to § 924(c) as calling for a term that runs "consecutively to any other term of imprisonment." U.S.S.G. § 2k2.4 Note 1. The First Circuit has also interpreted § 924(c) in this manner, but did so without any claimed support other than a citation to § 924(c) itself. *United States v. McFadden,* 13 F.3d 463, 464 (1st Cir. 1994).

been fully taken into account in the determination of the offense level for the instant offense, the sentence for the instant offense shall be imposed to run concurrently to the undischarged term of imprisonment. " 'The intended purpose of § 5G1.3(b) is to effectively "credit[ ] for guidelines purposes" defendants who have already served time—generally in another jurisdiction—for the same conduct or course of conduct.' " *United States v. Johnson,* 40 F.3d 1079, 1082 (10th Cir.1994) (*quoting United States v. Flowers,* 13 F.3d 395, 397 (11th Cir.1994)). If the all-encompassing reading of § 924(c) were adopted so that the gun-charge sentence would have to follow the service of the entire pre-existing state sentence and precede the federal sentence covering the identical conduct, § 5G1.3's concurrent sentencing scheme would be rendered nugatory. We decline to endorse such a contradictory interpretation.

■ Appellants Gonzales, Perez, and Hernandez–Diaz also contend that the district court erred by refusing to award pre-sentence credit to them for time that they spent in federal custody prior to sentencing. Their claim is based on 18 U.S.C. § 3585(b), which states:

A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences ... as a result of the offense for which the sentence was imposed ... that has not been credited against another sentence.

18 U.S.C. § 3585(b) (1988). The government does not dispute that § 3585(b) is applicable and that the appellants may be entitled to credit for the time in question, but instead argues that we need not reach that issue. We agree. The proper inquiry is whether the district court had the authority to award the credit sought at all. The United States Supreme Court has made it clear that it did not. In *United States v. Wilson,* 503 U.S. 329, 112 S.Ct. 1351, 117 L.Ed.2d 593 (1992), the Court held that it is the Attorney General, not the district court, who computes the amount of § 3585(b) time a defendant should receive as credit against his sentence. *Id.* at 332–33, 112 S.Ct. at 1353. Therefore, in order to be credited for time served prior to sentencing in this case, the appellants must seek an administrative remedy. The district court's denial of pre-sentence credit is therefore affirmed.

Appellants Hernandez–Diaz and Gonzales also challenge various evidentiary rulings by the district court. The trial court's decision to admit testimony is reviewed under an abuse of discretion standard. *United States v. Suntar Roofing, Inc.,* 897 F.2d 469, 479 (10th Cir.1990). We find no abuse of discretion in the district court's rulings. All of the admitted evidence was relevant, none was unduly prejudicial, and no exceptions applied.

■ Mr. Leon appeals the application to him of a two-point sentence enhancement under U.S.S.G. § 3A1.3 for restraining a victim. Mr. Leon does not dispute that Officer Torres and Detective Gloria were restrained. Rather, he argues that Officer Torres and Detective Gloria were restrained by co-defendants Hernandez–Diaz and Gonzales in an attempt to rob them of their drugs and money. Because this action was not a reasonably foreseeable act in furtherance of the agreed-upon conspiracy (to purchase drugs), he argues that he should not be held accountable for their actions. The government counters that these events were readily foreseeable to Mr. Leon. However, the evidence strongly supports Mr. Leon's claim that he was "out of the loop" and unaware of any plan to rob Detective Gloria and Officer Torres. The government has offered no explanation of why Mr. Leon raised his hands when Mr. Hernandez–Diaz pulled his gun on Officer Torres, or why Mr. Hernandez–Diaz relieved both Mr. Leon and Officer Torres of their weapons. The record, moreover, indicates that Mr. Leon, who was the local connection between the defendants and the officers, anticipated an on-going drug-trafficking relationship with the officers. Mr. Leon, significantly, had been promised a $10,000 payoff by Detective Gloria and Officer Torres *if* the sale took place. He therefore had no incentive to rob the officers—his hoped-for future partners.

Under U.S.S.G. § 1B1.3(a)(1)(B), a co-conspirator is only to be held responsible for the actions of others that are reasonably foresee-

able and in furtherance of the jointly undertaken criminal activity. Mr. Leon conspired to engage in an effort to deal, not to steal, drugs. He should not be held accountable when his co-conspirators substantially altered the agreed-upon plan without his knowledge or acquiescence. Accordingly, this two-level enhancement was improperly applied.

Finally, Mr. Perez challenges the overall sufficiency of the evidence to connect him with conspiracy. We shall interpret this as a challenge to the district court's refusal to grant his motion for acquittal. Viewing the evidence in the light most favorable to the government, there was adequate evidence to connect Mr. Perez to the conspiracy to possess and distribute marijuana, and for a reasonable jury to convict him. The district court did not err in refusing to acquit Mr. Perez.

 Mr. Perez also complains that his due process rights were violated because the government refused to accept his guilty plea to lesser charges unless the other co-defendants also pled guilty. "[T]here is no constitutional right to plea bargain." *Weatherford v. Bursey,* 429 U.S. 545, 561, 97 S.Ct. 837, 846, 51 L.Ed.2d 30 (1977). It is the prosecutor's prerogative to offer a "package deal," or no deal at all. *See United States v. Wheat,* 813 F.2d 1399, 1405 (9th Cir.1987), *aff'd* 486 U.S. 153, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988). Mr. Perez has therefore failed to state a claim for relief.

### CONCLUSION

The convictions of Messrs. Gonzales, Hernandez–Diaz, Perez and Leon for possession of drugs with intent to distribute, 21 U.S.C. § 841(a)(1) and (b)(1)(D), are REVERSED. The sentences imposed on the defendants for the conspiracy and firearm convictions are VACATED, and these matters are REMANDED to the district court for resentencing in accordance with this opinion. The conviction of Mr. Perez for conspiracy is AFFIRMED.

AFFIRMED in part, REVERSED in part, VACATED and REMANDED.