**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 27 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

CARLOS CARRASCO,

    Defendant - Appellant.

03-2095
D.C. No. CR-01-1320-JP
(D. N.M.)

**ORDER AND JUDGMENT**[*]

Before **TYMKOVICH, McWILLIAMS,** Circuit Judges, and **PAYNE**,[**] Chief District Judge.

**PAYNE**, Chief District Judge.

Carlos Carrasco, Ben Garcia and Alfred Chihuahua were charged in a four count indictment arising out of a conspiracy to distribute cocaine base. Defendant-Appellant Carlos Carrasco appeals his conviction after a jury returned its verdict finding him guilty of Conspiracy to Distribute 50 grams and more of

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**] James H. Payne, Chief District Judge, United States District Court for the Eastern District of Oklahoma, sitting by designation.

Cocaine Base, in violation of 21 U.S.C. § 846 (count 1); and Distribution of 5 grams and more of Cocaine Base, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(B) (counts 2, 3, and 4). Our jurisdiction arises under 28 U.S.C. § 1291 and we affirm.

*Facts*

We recount the facts in the light most favorable to the government because a jury convicted Mr. Carrasco. *See United States v. Green*, 175 F.3d 822, 827 (10th Cir. 1999). The evidence at trial consisted of the testimony of two government witnesses. The first witness, Glen Alexander, a lieutenant with the Region 6 Drug Task Force in Lea County, New Mexico, testified he supervised the undercover investigation involving the defendant and his two co-defendants. In the spring of 2001, Lieutenant Alexander contacted Lieutenant Tony Garcia with the Kermit Texas Police Department and asked for his assistance in an undercover operation in New Mexico. During the course of the investigation, Lieutenant Alexander supplied money to Lieutenant Garcia on four different occasions and Lieutenant Garcia made four separate purchases of cocaine between April 20, 2001 and May 15, 2001. Although Lieutenant Alexander provided Lieutenant Garcia with a body wire so surveillance officers could monitor the situation to ensure the safety of Lieutenant Garcia, the audio tapes of the transactions did not produce anything of evidentiary value.

The second witness, Lieutenant Tony Garcia, had worked on several cases for the Lea County Drug Task Force in the past. During his investigation of the defendants, Lieutenant Garcia testified he made four separate undercover transactions. The first transaction occurred on April 20, 2001. On that day, Lieutenant Garcia was introduced to a confidential informant by Lieutenant Alexander. Lieutenant Garcia was given $1000 cash and asked to purchase an ounce of crack cocaine.

Lieutenant Garcia and the confidential informant went to 6412 North Dal Paso in Hobbs, New Mexico and entered a barn. Inside the barn, Lieutenant Garcia observed three Hispanic males. Two of these men were working horses and the third one, "Chico", later identified as Alfred Chihuahua, walked toward Lieutenant Garcia and the confidential informant and said Appellant was not there yet, but would be back in a few minutes. A short time later, Ben Garcia and Appellant arrived. As Ben Garcia spoke with the confidential informant, Appellant approached the two men working horses and "Chico" asked Lieutenant Garcia if he was a cop.

After a few minutes had passed, Lieutenant Garcia approached Ben Garcia and the confidential informant and was advised by the confidential informant that Ben Garcia did not have an ounce of crack cocaine. Ben Garcia said he thought Lieutenant Garcia needed an ounce of crank (methamphetamine) and although he

didn't have that he did have four eight-balls of cocaine. Lieutenant Garcia told Ben Garcia he was not looking for cocaine and Ben Garcia indicated he could cook it if he had to. Ben Garcia informed Lieutenant Garcia that the four eight-balls of cocaine would be $440 and that an ounce of crack cocaine would cost $1000.

While these discussions were taking place, Appellant was fifteen to twenty feet away. After Ben Garcia indicated he could cook the cocaine if he had to, Ben Garcia said to wait a second and he walked toward Appellant, had a discussion with Appellant which Lieutenant Garcia could not hear and then came back to Lieutenant Garcia and asked whether Lieutenant Garcia had someone who could cook it.

Eventually, Lieutenant Garcia agreed to buy the four eight-balls of cocaine for $400. Ben Garcia handed the drugs, which later testified positive for cocaine, to Lieutenant Garcia and was given $400. Ben Garcia turned around and handed the $400 to Appellant and Appellant put the money in his pocket. Ben Garcia then returned to Lieutenant Garcia and said he would have crack cocaine the next time. In Lieutenant Garcia's opinion, Ben Garcia seemed to change his mind about cooking the crack after his conversation with Appellant.

The second drug transaction occurred on April 24, 2001, when Lieutenant Garcia and the confidential informant again went to 6412 North Dal Paso in

Hobbs to attempt to purchase an ounce of cocaine base from Appellant. Upon their arrival they were met by "Chico" outside the barn. "Chico" told them he was cooking the crack cocaine and it wouldn't be ready for another thirty minutes. "Chico" told them to come back in one hour and to bring some beer. Lieutenant Garcia and the confidential informant left and came back in about forty-five minutes with a twelve-pack of beer. Upon their arrival the second time, "Beto," one of the men who had been working horses on April 20, 2001, told them Appellant and "Chico" wanted them to wait outside while the drugs were being cooked. Lieutenant Garcia offered "Beto" a beer and he took one. Lieutenant Garcia asked if the crack cocaine was almost done and "Beto" said it would be done pretty soon. Additionally, "Beto" said "Chico" was cooking the crack cocaine inside the barn.

A short time later Appellant exited the barn and asked Lieutenant Garcia for three beers. Lieutenant Garcia handed Appellant the beers and then asked Appellant if the ounce of crack cocaine was almost done. Appellant said it would be done soon and then went back inside the barn.

The next thing Lieutenant Garcia observed was Ben Garcia come out the barn door and motion for "Beto." "Beto" met Ben Garcia just inside the barn door and Ben Garcia appeared to give something to "Beto." When "Beto" returned to Lieutenant Garcia and the confidential informant, "Beto" said he had

just got a line of cocaine from Ben Garcia. The confidential informant asked why it was taking so long and then he went into the barn. When the confidential informant returned from the barn, he indicated it would be about five more minutes before the drugs were ready.

Approximately five minutes later, the confidential informant advised Lieutenant Garcia that the drugs were ready and Lieutenant Garcia walked into the barn. As he entered the barn, Lieutenant Garcia observed Ben Garcia walking away from "Chico" and Appellant, who were both standing next to a portable stove. Ben Garcia approached Lieutenant Garcia and took out a clear plastic bag containing a brown rock-formed substance, later identified as crack cocaine. Lieutenant Garcia asked if Ben Garcia would take $950 for the crack cocaine. Ben Garcia indicated it would be $1,000 because they had to cook it and Lieutenant Garcia gave him the $1,000.

The third drug transaction occurred on May 8, 2001, when Lieutenant Garcia and the confidential informant arranged to purchase two ounces of crack cocaine. They were to meet at "Chico's" property, which was located south of Hobbs on Highway 18, in Nadine, New Mexico. When they arrived at the property and got out of their vehicle, they saw Appellant, Ben Garcia, "Beto," and others who indicated they were having a cookout.

Ben Garcia asked Lieutenant Garcia how much he was willing to pay for 2 ounces of crack cocaine. After indicating that he had been shorted on his last transaction, Lieutenant Garcia said he would pay $900 for an ounce. Ben Garcia advised Appellant that he needed to talk to him and Appellant motioned for Ben Garcia to meet him inside the barn. As Ben Garcia approached Appellant, Lieutenant Garcia heard Ben Garcia tell Appellant that he was only willing to pay $900. Ben Garcia then came back to Lieutenant Garcia and said he would take $900 and from that day forward the price would be $900. Ben Garcia then walked toward a small house trailer, went inside, motioned for Lieutenant Garcia to meet him at the trailer. Once Lieutenant Garcia went inside the trailer, Ben Garcia pulled out crack cocaine in a clear plastic bag and sold Lieutenant Garcia an ounce.

The final transaction took place on May 15, 2001. On that day, Lieutenant Garcia again went to the Nadine, New Mexico location. Upon his arrival, Lieutenant Garcia went inside the barn and observed a male and female, but was told that Appellant was not there. The occupants of the barn were just about to call Appellant when a pickup arrived. Appellant was driving the pickup and Ben Garcia was a passenger in the pickup.

As they exited the vehicle, both Ben Garcia and Appellant said hello to Lieutenant Garcia. Appellant then looked at Lieutenant Garcia, then at Ben

Garcia, said "Benny" and walked away. Ben Garcia approached Lieutenant Garcia and they both went to the trailer. Inside the trailer, after a short discussion, Lieutenant Garcia gave Ben Garcia $900 for an ounce of crack cocaine.

*Sufficiency of the Evidence*

Appellant contends the evidence was insufficient to find him guilty of Conspiracy to Distribute more than 50 grams of cocaine base in violation of 21 U.S.C. § 846, 841(a)(1) and (b)(1)(A). Appellant also contends the evidence was insufficient to find him guilty of distribution of more than 5 grams of cocaine base on April 24, 2001, May 8, 2001, and May 15, 2001.

In reviewing the sufficiency of evidence in a criminal case, "[t]he evidence--both direct and circumstantial, together with reasonable inferences to be drawn therefrom--is sufficient if, when taken in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt." *United States v. Sanders*, 929 F.2d 1466, 1470 (10th Cir.) (quoting *United States v. Hooks*, 780 F.2d 1526, 1531 (10th Cir.), *cert. denied*, 475 U.S. 1128, 106 S.Ct. 1657, 90 L.Ed.2d 199 (1986)), *cert. denied*, 502 U.S. 846, 112 S.Ct. 143, 116 L.Ed.2d 109 (1991). Evidence supporting a conviction must be substantial and must do more than raise a mere suspicion of guilt. *United States v. Taylor*, 113 F.3d 1136, 1144 (10th Cir. 1997). When reviewing the

evidence, this Court must consider the collective inferences drawn from all of the evidence and the verdict will not be overturned unless "no reasonable jury could have reached the disputed verdict." *United States v. Bell*, 154 F.3d 1205, 1208 (10th Cir. 1998).

*A. Conspiracy Conviction*

To prove a defendant guilty of conspiracy to distribute cocaine base in violation of 21 U.S.C. § 846 and 841(a)(1) and (b)(1)(A), the jury must find, beyond a reasonable doubt, (1) an agreement with another person to violate the law; (2) knowledge of the essential objectives of the conspiracy; (3) knowing and voluntary involvement of the defendant; and (4) interdependence among the alleged co-conspirators. *United States v. Carter*, 130 F.3d 1432, 1439 (10th Cir. 1997), *cert. denied*, 523 U.S. 1144, 118 S.Ct. 1856, 140 L.Ed.2d 1104 (1998). An agreement may be inferred not only from the acts of the parties, but also from other circumstantial evidence which establishes activities are being jointly undertaken for the accomplishment of a common purpose. *United States v. Johnson*, 42 F.3d 1312, 1319 (10th Cir. 1994).

While there was no direct evidence of an agreement between Appellant and the co-conspirators to violate the law, the uncontroverted actions of the Appellant in conjunction with those of his co-conspirators, as well as the other circumstantial evidence in this case, provided sufficient evidence from which the

jury could have reasonably inferred that Appellant and his co-conspirators had an agreement to manufacture and/or distribute crack cocaine. During the first transaction, Lieutenant Garcia had to wait until Appellant arrived before he could get any information about whether drugs were, in fact, available. The jury knew Appellant had to be consulted before a purchase price could be agreed upon with Lieutenant Garcia during this transaction and that Appellant had accepted the proceeds from this drug transaction which occurred within 15-20 feet of where Appellant was standing. The jury also heard that Ben Garcia appeared to change his mind about cooking the cocaine after conversing with Appellant.

Additionally, the jury was aware that during the second transaction, the agent and confidential informant were told that Appellant and another co-defendant wanted them to wait outside while the drugs were being cooked. Appellant was not only present while crack cocaine was being cooked but knew how much longer it would be before the cook was completed. The jury also heard uncontroverted evidence that Appellant appeared to be directly involved in the cook as he stood next to a portable stove inside the barn where the cook was occurring and stayed there while another co-defendant walked away from the stove and handed the agent crack cocaine in exchange for $1000.

On the third transaction, Appellant was close enough to hear Lieutenant Garcia say he was willing to pay $900 for an ounce of crack cocaine. Again, the

-10-

testimony was unrefuted that Ben Garcia had to talk with the Appellant before he could agree to the purchase price. Further, Appellant was directly behind Ben Garcia when this co-defendant agreed on the reduced price.

Finally, the jury could infer from the actions of the individuals present at the locations of the four separate drug transactions, that Appellant, although not directly participating in the actual sales, was an essential participant in the drug conspiracy. We conclude, therefore, all of this evidence, considered together, is more than sufficient to allow a reasonable jury to infer that Appellant had an agreement with Ben Garcia and was personally involved in a scheme to manufacture and distribute crack cocaine.

For the reasons outlined above, we conclude the evidence presented at trial was also sufficient to allow a reasonable jury to infer that Appellant had "a general awareness of both the scope and the objective" of the conspiracy. In particular, the fact Appellant was within earshot of more than one drug transaction and had to be consulted on various issues dealing with the transactions establishes he was aware of the essential objective of the conspiracy. Moreover, since a jury can presume that a defendant acting in furtherance of the objectives of a conspiracy is a knowing participant in that conspiracy, *United States v. Bell*, 154 F.3d 1205, 1208 (10th Cir. 1998), we conclude there was sufficient evidence to satisfy this element.

Finally, "[i]nterdependence exists where each coconspirator's actions constitute essential and integral steps toward the realization of a common, illicit goal." *United States v. Carter, supra* at 1440 (citing *United States v. Edwards*, 69 F.3d 419, 432 (10th Cir. 1995)). For the reasons outlined above, we conclude there was sufficient evidence to satisfy this element.

*B. Distribution of Five or more Grams of Cocaine Base, Aiding and Abetting*

To find a defendant guilty of Distribution of Five or more Grams of Cocaine Base, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(B); and 18 U.S.C. § 2, the evidence must establish beyond a reasonable doubt the following elements: "(1) the defendant knowingly possessed the illegal drug; and (2) the defendant possessed the drug with the specific intent to distribute it." *United States v. Reese*, 86 F.3d 994, 996 (10th Cir. 1996) (quoting *United States v. Gonzales*, 65 F.3d 814, 818 (10th Cir. 1995), *cert. denied* 518 U.S. 1003, 116 S.Ct. 2522, 135 L.Ed.2d 1047 (1996)). Additionally, a defendant who aids and abets the commission of a crime is punishable as a principle. *See*, 18 U.S.C. § 2.

Possession may be actual or constructive. *United States v. Reese,* 86 F.3d at 996. As noted by Appellant, the possession charges in this case center around Ben Garcia's possession of the cocaine base. Thus, to support Appellant's conviction on these charges, there must be evidence he constructively possessed the cocaine base Ben Garcia delivered to Lieutenant Garcia. Constructive

possession requires some nexus or link between the defendant and the contraband and it may be established by circumstantial evidence. *United States v. Carter*, 130 F.3d at 1441. Furthermore, constructive possession may be joint among several individuals. *Id.*

After reviewing the record on appeal, we conclude there was sufficient evidence to establish Appellant's constructive possession of the cocaine base. Because possession with intent to distribute was the contemplated crime of the conspiracy charged in Count I of the indictment, Appellant is deemed to have possessed any controlled substances possessed by his coconspirators' possession. Additionally, Appellant was charged with aiding and abetting Garcia's possession of the cocaine base in violation of 18 U.S.C. § 2, and the jury was specifically instructed on aiding and abetting. Evidence supporting a conviction for conspiracy can also be used to uphold a conviction for aiding and abetting in the possession of controlled substances with intent to distribute. *United States v. Carter*, 130 F.3d at 1441 (quoting *United States v. Gallo*, 927 F.2d 815, 822 (5th Cir. 1991)). Accordingly, in light of the evidence outlined above in the discussion of the conspiracy charge, we conclude there was sufficient evidence to support a conviction for aiding and abetting in Ben Garcia's possession of the cocaine base.

*Conclusion*

The judgment of the United States District Court for the District of New Mexico is AFFIRMED.