**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 16 1997**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

    v.

ISRAEL CARTER, JR.,

    Defendant-Appellant.

No. 97-2122

---

Appeal from the United States District Court
for the District of New Mexico
(D.C. No. CR-96-248-JC)

---

Stephen P. McCue, Assistant Federal Public Defender, Albuquerque, New Mexico, for the appellant.

David N. Williams, Assistant United States Attorney (John J. Kelly, United States Attorney, and Charles L. Barth, Assistant United States Attorney, with him on the brief), Albuquerque, New Mexico, for the appellee.

---

Before PORFILIO, McKAY, and BRISCOE, Circuit Judges.

---

BRISCOE, Circuit Judge.

---

Defendant Israel Carter, Jr., appeals his convictions for conspiracy to possess with intent to distribute cocaine, 21 U.S.C. §§ 846 and 841(a)(1), and possession with intent to distribute cocaine, 21 U.S.C. §§ 841(a)(1), (b)(1)(B), claiming (1) the district court erred in denying his requested instructions on venue; (2) the evidence presented at trial was insufficient to support his convictions; (3) he was denied effective assistance of counsel during plea negotiations; and (4) the government was presumptively vindictive in refusing to renew a plea offer extended to him prior to his first trial. We exercise jurisdiction pursuant to 28 U.S.C. § 1291, and affirm the conspiracy conviction, reverse the possession with intent to distribute conviction, and remand with directions to vacate that conviction and resentence.

**I.**

On May 31, 1995, Michael Pelligrini and Tony Savilla, two DEA task force officers, were looking for possible drug couriers at a Greyhound bus station in Albuquerque. A bus en route from Los Angeles to New York arrived at the station at approximately 3:15 p.m., and all of the passengers got off the bus so that the bus could be cleaned and serviced. The officers boarded the bus to look at baggage being transported by the passengers and noticed a new bag with plastic wrapping material on the handles. Because drug couriers typically use new bags to transport drugs, Savilla touched the bag and felt two brick-type objects. When

the passengers reboarded the bus, the officers inquired about each passenger's baggage and discovered the bag belonged to a passenger whose bus ticket identified her as Anthlia Jackson, but whose real name is Anthlia Craft. Her bus ticket indicated she was traveling from Los Angeles to Tulsa. The officers searched the bag, along with another bag being transported by Craft, and discovered two kilograms of cocaine in the new bag and clothing in both bags. Craft was arrested, and a controlled delivery of the cocaine to Craft's connection in Tulsa was arranged.

Pelligrini, Savilla, Craft, and Mark Barela, another task force agent, traveled by air to Tulsa on June 1, 1995. The officers arranged for a state trooper to stop the bus approximately ten to fifteen miles from the Tulsa bus station. Pelligrini, Savilla, and Craft reboarded the bus, carrying Craft's two bags. When the bus arrived at the Tulsa station between 6:00 and 6:15 a.m., Craft got off the bus with her two bags and walked to a pay phone. She placed a call to a pager number. Approximately five minutes later, Craft placed a second call to a pager number. The task force agents located outside the station observed Carter arrive at the station in a red Mustang automobile. Carter entered the bus station a few minutes after the second call to the pager number, approached Craft, and began talking to her. Carter and Craft then left the station with Carter carrying the new bag containing the cocaine and Craft carrying the other bag. As Carter neared the

driver-side door of his Mustang, a local sheriff's officer drove a vehicle with official markings and flashing lights up to the Mustang and blocked its movement. Other officers also approached Carter. Barela, who was wearing a DEA raid jacket, pointed his handgun at Carter and yelled, "Police officer. Halt. Freeze." R. II at 128. Carter, who was approximately fifteen to twenty feet from Barela, looked at Barela, placed the bag containing the cocaine on the ground, and began walking at a fast pace toward the bus station and toward Barela. Barela continued to command Carter to halt, but Carter did not heed the commands. Barela began walking toward Carter to prevent him from reaching the street and as they neared each other, Carter walked between Barela and the building. With the assistance of other officers, Barela knocked Carter to the ground and arrested him.

After Carter was taken to the Tulsa DEA task force office, he was searched and a pager and approximately $1,948 in cash were recovered. Two messages from the pay phone at the bus station, which corresponded to the two calls placed by Craft, were still on the pager. Carter agreed to waive his rights and be interviewed. He told the officers Craft's sister had asked him to pick up Craft at the bus station. Although he acknowledged knowing Craft for approximately five years, he could not remember the name of Craft's sister or her telephone number. As for the cash, Carter told the officers he had received approximately $3,000

from his mother as a portion of an insurance settlement she had received. He told the officers he mowed lawns for a living and had earned approximately $100 each for three lawns in the week prior to the incident. Finally, Carter told the officers he lived in Okmulgee, approximately thirty-eight miles from the bus station. An officer subsequently drove from Okmulgee to the bus station and testified at trial that the trip took forty-two minutes, indicating Carter could not have driven from his home to the station after receiving the pages from Craft.

Carter was originally indicted in Oklahoma federal court on June 7, 1995, on one count of possession with intent to distribute cocaine, but the case was dismissed. He was reindicted with Craft on July 7, 1995, in federal district court in New Mexico on one count of conspiracy to possess cocaine with intent to distribute and possession of cocaine with intent to distribute. His court-appointed counsel, Edward Bustamante, moved to withdraw as Carter's counsel. The court denied the motion. On March 19, 1996, the government faxed Bustamante a letter with a proposed plea agreement for a 57-month sentence in exchange for a guilty plea. Carter rejected the proposed plea agreement. The indictment was subsequently dismissed without prejudice for violation of the Speedy Trial Act.

Carter was indicted for the third time on May 9, 1996, for conspiracy and possession with intent to distribute. On July 7, 1996, a superseding indictment was filed charging Carter and Craft with the same counts charged in the May 9

indictment. Carter was represented by Bustamante at trial and was convicted by a jury of both counts on July 23, 1996. Bustamante again moved to withdraw and the motion was granted. The district court appointed Jacquelyn Robins to represent Carter. Robins filed a motion for judgment of acquittal and a motion for new trial. The court granted the motion for new trial with no detailed explanation. However, at Carter's second trial, the district court explained to the jury why the motion for new trial had been granted:

> This case has several wrinkles to it, ladies and gentlemen. It's the second time I've tried it. The first time I tried it, the government in their opening statement and throughout the trial was of the opinion that the codefendant [Craft] was going to testify, and at the last minute she did not testify.
> Well, the government had told the jury everything she was going to say in their opening statement, so I had to grant--I granted a new trial, based on the misunderstanding that the government had that she was going to testify.
> She told the government, I think, the day or two before the trial that her house had been broken in to and that she had been threatened. And I think she had a child or something, and the child was threatened.
> So Mr. Carter got a new attorney, Ms. Robins. Based on--I made a finding of ineffective assistance of counsel on behalf of his other attorney, so we got him a new attorney.

R. IV at 262-63.

Prior to his second trial, Carter tried unsuccessfully to persuade the government to renew the original plea offer. The case proceeded to trial and Carter was convicted a second time on both counts. His motions for judgment of acquittal were denied. Carter then filed a motion to require the government to

renew its original plea offer. He argued the original plea offer was denied due to a lack of attorney/client relationship between Carter and his counsel, Bustamante. This motion was also denied. At sentencing, the court asked Carter why he had turned down the original plea offer. Carter stated that Bustamante did not initially advise him to take the 57-month offer, but instead told him he could likely get a similar or better bargain if his motion to dismiss on speedy trial grounds was granted. In response to these representations by Carter, the government requested that sentencing be rescheduled to allow Bustamante to testify.

At the rescheduled sentencing hearing, Bustamante testified he was involved in plea negotiations with the government and had received the government's March 19 letter offering Carter a 57-month term of imprisonment in return for his plea of guilty. Bustamante testified he discussed the government's March 19 letter with Carter and specifically told Carter he would likely face a sentence of thirty years to life if he went to trial and was convicted because he was a career criminal. Bustamante further testified that he urged Carter to take the government's plea offer. During their discussion, Carter asked him what would happen if the court granted his motion to dismiss on speedy trial grounds. According to Bustamante, he told Carter the government would likely reindict him. Bustamante stated, "I told him if he won the motion, it was possible he

would get another offer, but it never went farther than that." R. VI at 16. Carter testified at the rescheduled sentencing hearing as well. He testified Bustamante told him if he was successful on the motion to dismiss, he would go to the prosecutor and ask for a sentence of three or four years. At the conclusion of the testimony, the district court found Bustamante had unequivocally advised Carter to take the original plea offer, but that Carter had decided not to take the offer. Based on these findings, the court rejected Carter's request for downward departure on the basis of ineffective assistance of counsel at the time of the original plea offer and sentenced Carter to 262 months' imprisonment.

## II.

### Venue instruction

Carter contends the district court erred in failing to instruct the jury on venue. Carter submitted two proposed instructions concerning venue, one for each count. The court refused to give the instructions, concluding venue existed as a matter of law.

Venue is a question of fact that ordinarily must be decided by the jury. United States v. Miller, 111 F.3d 747, 749 (10th Cir. 1997). More specifically, it is an element of the prosecution's case that must be proved by a preponderance of the evidence. Id. at 749-50 (citing United States v. Record, 873 F.2d 1363, 1366 (10th Cir. 1989)). In this circuit, "venue is [deemed to be] in issue not only when

there is a question about where the crime occurred, 'but also . . . when defendants can be convicted of the offenses charged without an implicit finding that the acts used to establish venue have been proven.'" Id. at 751 (quoting United States v. Moeckly, 769 F.d. 453, 461 (8th Cir. 1986)).  "[F]ailure to instruct on venue, when requested, is reversible error unless it is beyond a reasonable doubt that the jury's guilty verdict on the charged offense necessarily incorporates a finding of proper venue."  Id.  More specifically, "[t]he question . . . is not whether the evidence, if believed by the jury, is sufficient to establish venue, but whether the jury as a matter of logical necessity made a finding on the omitted element in order to reach the verdict actually rendered."  Id. at 753.

Because Carter timely requested a venue instruction with respect to both counts of the indictment, the district court's refusal to give the instructions is reversible error unless we can conclude the jury's guilty verdict on each count necessarily incorporated a finding of proper venue.

*The conspiracy conviction*

The indictment in this case alleged a conspiracy "[o]n or about the 31st day of May and 1st day of June, 1995, in Bernalillo County, in the State and District of New Mexico, and elsewhere."  R. I, doc. 82, instr. 7b.  Although the jury was not instructed it must find either an agreement or an overt act in furtherance of

-9-

the conspiracy in New Mexico, its guilty verdict on this count necessarily incorporated a finding that an overt act was committed in New Mexico. More specifically, by finding Carter and Craft conspired to possess with intent to distribute cocaine, the jury necessarily had to find the agreement existed at the time Craft was arrested in New Mexico when she committed the uncontroverted overt act of transporting cocaine. It is inconceivable that Craft boarded the bus in Los Angeles carrying a large quantity of high purity cocaine without a plan to distribute it once she arrived in Tulsa. Likewise, it is inconceivable the jury found the agreement between Carter and Craft was reached on the morning of her arrival at the Tulsa bus station. All of the circumstantial evidence suggests Carter and Craft had prearranged for Carter to pick up Craft when she arrived at the bus station, and that Carter was well aware Craft was carrying the cocaine with her. Thus, the jury's verdict on the conspiracy count necessarily includes a finding that the conspiracy existed at the time Craft was transporting the cocaine through New Mexico (as well as in Oklahoma and other states through which Craft traveled), and venue is satisfied. See Record, 873 F.2d at 1366 (in a conspiracy case, venue is proper in any district in which either conspiratorial agreement is reached or an overt act in furtherance of conspiracy is committed by any of the conspirators).

*The possession conviction*

Count II of the indictment charged that "[o]n or about the 31st day of May and 1st day of June, 1995, in Bernalillo County, in the State and District of New Mexico, and elsewhere, the defendant, ISRAEL CARTER, JR., and Anthlia Leona Craft, a/k/a Angie Johnson, a/k/a Archalia Leona Jackson, did unlawfully, willfully, knowingly and intentionally possess with intent to distribute 500 grams and more of a mixture and substance containing a detectable amount of Cocaine, a Schedule II controlled substance." R. I, doc. 82, instr. 7b. At trial, the jury was instructed on both actual and constructive possession, and was told: "You may find that the element of possession, as that term is used in these instructions, is present if you find beyond a reasonable doubt that the defendant had actual or constructive possession, either alone or jointly with others." Id., instr. 7h. Although the government argued Carter constructively possessed cocaine in Albuquerque through Craft's possession of the drug in that locale, it is conceivable the jury could have based its guilty verdict in Count II on Carter's actual possession of the cocaine in Tulsa. Moreover, although it was uncontroverted that Craft was in possession of cocaine in New Mexico, it is at least theoretically possible the jury concluded Carter did not have sufficient control over her to have constructive possession of the cocaine in New Mexico. Thus, we conclude the jury's verdict on Count II does not necessarily incorporate

-11-

a finding of proper venue and we reverse Carter's conviction for possession with intent to distribute.

## III.

### Sufficiency of the evidence

Carter contends the evidence presented at trial was insufficient to support his convictions. Sufficiency of the evidence is a question of law subject to de novo review. United States v. Wilson, 107 F.3d 774, 778 (10th Cir. 1997). Evidence is sufficient to support a conviction if the evidence and reasonable inferences drawn therefrom, viewed in the light most favorable to the government, would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt. Id. In examining the evidence, "we evaluate the sufficiency of the evidence by 'consider[ing] the collective inferences to be drawn from the evidence as a whole.'" Id. (quoting United States v. Hooks, 780 F.2d 1526, 1532 (10th Cir. 1986)). We will not overturn a jury's finding unless no reasonable juror could have reached the disputed verdict. See, e.g., United States v. Chavez-Palacios, 30 F.3d 1290, 1294 (10th Cir. 1994); United States v. Hoenscheidt, 7 F.3d 1528, 1530 (10th Cir. 1993).

*The conspiracy conviction*

To find a defendant guilty of conspiracy in violation of 21 U.S.C. §§ 841(a)(1) and 846, the jury must find, beyond a reasonable doubt, (1) an agreement with another person to violate the law, (2) knowledge of the essential objectives of the conspiracy, (3) knowing and voluntary involvement, and (4) interdependence among the alleged conspirators. United States v. Lopez, 100 F.3d 113, 118 (10th Cir. 1996). As outlined below, the record in this case contains sufficient evidence for a rational trier of fact to find each of the essential elements of conspiracy beyond a reasonable doubt.

It is permissible for the jury to infer an agreement constituting a conspiracy "from the acts of the parties and other circumstantial evidence indicating concert of action for the accomplishment of a common purpose." United States v. Johnson, 42 F.3d 1312, 1319 (10th Cir. 1994). Here, there was no direct evidence of an agreement between Carter and Craft to violate the law. However, based upon their uncontroverted actions, as well as other circumstantial evidence, the jury could have reasonably inferred that Carter and Craft had agreed to distribute cocaine in Tulsa. The jury knew Craft was traveling from Los Angeles to Tulsa with two kilos of cocaine, an amount far greater than normally found for purposes of personal use. Further, a chemist testified the purity level of one package of cocaine was 86 percent and the other was 87 percent, and that "street level"

-13-

cocaine typically has a purity level of approximately 20 percent. Based on this evidence, the jury reasonably could have concluded Craft was transporting the cocaine to Tulsa for distribution. The jury also heard uncontroverted evidence concerning the controlled delivery of the cocaine to Carter. It is uncontroverted that Craft arrived at the bus station and paged Carter, and that Carter arrived at the station a few minutes later. Carter was apparently waiting for Craft's page and knew where to go when he was paged because he did not return Craft's pages before arriving at the bus station. It is further uncontroverted that Carter and Craft left the bus station together and walked toward Carter's car with Carter carrying the bag containing the cocaine. It is also uncontroverted that Carter acted in an evasive manner when confronted by DEA agents. He ignored directions to stop, dropped the bag, attempted to walk quickly past one of the officers, and could only be stopped by the officers wrestling him to the ground. Finally, it is uncontroverted that Carter was carrying a pager and a large amount of cash when he was arrested. We conclude this evidence, considered together, is more than sufficient to allow a reasonable jury to infer that Carter was involved with Craft in the scheme to distribute cocaine.

For reasons outlined above, we conclude the evidence presented at trial was also sufficient to allow a reasonable jury to infer that Carter had "a general awareness of both the scope and the objective" of the conspiracy. United States

-14-

v. Evans, 970 F.2d 663, 670 (10th Cir. 1992); see also United States v. Christian, 786 F.2d 203, 211 (6th Cir. 1986) ("defendant's guilty knowledge and voluntary participation may be inferred from surrounding circumstances").  In particular, Carter's guilty knowledge could be inferred from his actions at the bus station after he was confronted and by his lies to DEA officers after he was arrested.  This guilty knowledge, coupled with his actions in picking up Craft and carrying the bag containing the cocaine, is sufficient to demonstrate his awareness of the essential objective of the conspiracy (i.e., possess cocaine with intent to distribute).

A jury may presume a defendant is a knowing participant in the conspiracy when he or she acts in furtherance of the objective of the conspiracy.  United States v. Brown, 995 F.2d 1493, 1502 (10th Cir. 1993).  For reasons outlined above, we conclude there was sufficient evidence to satisfy this element.

Interdependence exists where each coconspirator's activities constitute essential and integral steps toward the realization of a common, illicit goal.  United States v. Edwards, 69 F.3d 419, 432 (10th Cir. 1995).  Here, the jury reasonably could have inferred that Craft was the courier for the cocaine and that Carter picked up Craft at the bus station to assist her in distributing the cocaine.  Thus, the jury reasonably could have inferred that Carter was dependent on Craft to smuggle the cocaine to Tulsa, and Craft was dependent on Carter to assist her

in the distribution process once she arrived in Tulsa.

*The possession conviction*

To support a conviction of possession with intent to distribute, "the evidence must prove beyond a reasonable doubt the following elements: '(1) the defendant knowingly possessed the illegal drug; and (2) the defendant possessed the drug with the specific intent to distribute it.'" United States v. Reece, 86 F.3d 994, 996 (10th Cir. 1996) (quoting United States v. Gonzales, 65 F.3d 814, 818 (10th Cir. 1995), cert. denied 116 S. Ct. 2522 (1996)).[1]  Possession may be actual or constructive.  Reece, 86 F.3d at 996.  As noted by Carter, the possession charge in this case centered around Craft's possession of the cocaine in New Mexico (where Carter was charged and tried) rather than on Carter's actual possession of the cocaine in and outside the Tulsa bus station.  Thus, to support Carter's conviction on this charge, there must be evidence he constructively possessed the cocaine Craft was carrying in New Mexico.  An individual

---

[1] Although we have determined Carter's conviction for possession with intent to distribute must be reversed because the jury's verdict does not necessarily incorporate a finding of proper venue, we must still determine whether the evidence was otherwise sufficient to support his conviction on that charge.  See United States v. Johnson, 120 F.3d 1107, 1108 n.1 (10th Cir. 1997).  If, as Carter contends, the evidence was not otherwise sufficient to support the charge, the government would be preluded from retrying Carter on that charge under the Double Jeopardy Clause of the Fifth Amendment. Id.

-16-

constructively possesses property when he knowingly holds the power and ability to exercise dominion and control over the property. United States v. Ruiz-Castro, 92 F.3d 1519, 1531 (10th Cir. 1996). Constructive possession has been alternatively defined by this court as "'an appreciable ability to guide the destiny of the drug.'" Id. (quoting United States v. Massey, 687 F.2d 1348, 1354 (10th Cir. 1982)). "In order to establish constructive possession, the government must establish that there was a sufficient nexus between the accused and the drug." Id. "Constructive possession may be established by circumstantial evidence and may be joint among several individuals." Id.

After reviewing the record on appeal, we conclude there is sufficient evidence to demonstrate Carter's constructive possession of the cocaine in New Mexico. "As possession with intent to distribute was the contemplated crime of the conspiracy, [defendant] is deemed to possess the [controlled substance] through his co-conspirators' possession." United States v. Medina, 887 F.2d 528, 532 (5th Cir. 1989); see also United States v. Gallo, 927 F.2d 815, 823 (5th Cir. 1991). In light of Carter's agreement with Craft to transport the cocaine to Tulsa for distribution, it is reasonable to infer Carter had the ability to guide the destination of the cocaine and was thus constructively in possession of the cocaine as it passed through New Mexico.[2] In any event, Carter was also charged

_____

[2] In reviewing the venue issue raised by Carter, we concluded the jury's verdict on
(continued...)

-17-

with aiding and abetting Craft's possession of the cocaine in violation of 18 U.S.C. § 2, and the jury was specifically instructed on aiding and abetting. "The evidence that supports a conviction for conspiracy can also be used to support a conviction for aiding and abetting in the possession of illegal narcotics with intent to distribute." Gallo, 927 F.2d at 822. Thus, in light of the evidence outlined above in the discussion of the conspiracy charge, we conclude there is sufficient evidence to support a conviction for aiding and abetting in Craft's possession of the cocaine.

## IV.

### Ineffective assistance of counsel

Carter contends he was denied effective assistance of counsel in deciding whether to accept the government's 57-month plea offer prior to the first trial. He argues he would have accepted the plea offer if he had been counseled effectively. Carter argues deprivation of this constitutional right entitles him to an opportunity to accept the original plea offer and be sentenced accordingly.

---

[2](...continued)
the possession charge did not necessarily incorporate a finding that Carter had sufficient control over Craft to have constructive possession of the cocaine in New Mexico. In reviewing the sufficiency of the evidence issue raised by Carter on this same charge, we apply a different standard of review, one that requires us to view the evidence in the light most favorable to the government. Under this standard, we conclude sufficient evidence was presented by the government to have allowed the jury to determine Carter had control over Craft, and thus had constructive possession of the cocaine in New Mexico.

The general rule in this circuit is that ineffective assistance of counsel claims should be brought in collateral proceedings rather than on direct appeal. United States v. Gallegos, 108 F.3d 1272, 1279 (10th Cir. 1997). The reason for this rule is straightforward:

> A factual record must be developed in and addressed by the district court in the first instance for effective review. Even if evidence is not necessary, at the very least counsel accused of deficient performance can explain their reasoning and actions, and the district court can render its opinion on the merits of the claim.

United States v. Galloway, 56 F.3d 1239, 1240 (10th Cir. 1995) (en banc). An exception to the general rule exists in rare circumstances where the ineffective assistance claim has been adequately developed by the district court prior to appeal. In such circumstances we can agree to consider the claim on direct appeal. Gallegos, 108 F.3d at 1280.

Having reviewed the record on appeal, we conclude this is one of the rare instances where a claim of ineffective assistance has been sufficiently developed by the district court to allow review of the claim on direct appeal. Carter raised the ineffective assistance claim in a post-trial motion (after the first trial) entitled "Motion to Require Renewal of Plea Proposal," as well as in a subsequent motion entitled "Pre-sentence Request for Downward Departure." At the sentencing hearing, the court heard testimony from both Carter and Bustamante concerning their discussions about the government's plea offer. At the conclusion of that

-19-

testimony, the court found Bustamante was not ineffective and that Carter "rolled the dice and lost." R. VI at 23. In light of this record, we will proceed to review Carter's claim rather than requiring him to pursue it through a § 2255 motion.

The district court's finding that Bustamante was not ineffective is a mixed question of fact and law which we review de novo. United States v. Blackwell, 127 F.3d 947, 1997 WL 631434 at *7 (10th Cir. 1997). However, the factual findings that underlie the ultimate finding are reviewed only for clear error. Id.

To prevail on this claim, Carter must demonstrate Bustamante's performance "fell below an objective standard of reasonableness," and that Bustamante's deficient performance was so prejudicial there is a reasonable probability that, but for his unprofessional errors, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 688 (1984). With respect to the first part, effective assistance of counsel includes counsel's informed opinion as to what pleas should be entered. Boria v. Keane, 83 F.3d 48, 53 (2d Cir. 1996). As for the prejudice prong, there must be a reasonable probability that but for incompetent counsel a defendant would have accepted the plea offer and pleaded guilty. Hill v. Lockhart, 474 U.S. 52, 59 (1985).

Carter cannot demonstrate that Bustamante's performance was deficient or that he would have accepted the government's plea offer if he had been given additional information by Bustamante. The record on appeal clearly indicates

Bustamante advised Carter of the risk he would face if he went to trial (i.e., a possible thirty-year to life sentence because of his career criminal status) and urged Carter to accept the plea offer. In response to questions from Carter, Bustamante did advise him the government *might* extend a similar plea offer if the motion to dismiss on speedy trial grounds was granted. However, Bustamante made no promises concerning whether such an offer would be extended and, indeed, urged Carter to accept the existing plea offer. Although Carter alleges Bustamante told him he might receive a more favorable offer, Bustamante's testimony does not support this allegation and the court clearly chose to believe Bustamante on this point. Finally, the record reflects Carter himself, armed with full knowledge of the ramifications of his decision, decided to reject the 57-month plea offer. We therefore reject Carter's claim of ineffective assistance of counsel.

## V.

### Government's refusal to renew plea offer

Carter contends the government was presumptively vindictive when it refused to renew the offer of its original 57-month plea agreement prior to the second trial. Carter sought renewal of the original plea offer after the district court had granted his motion for new trial.

Because the very purpose of instituting criminal proceedings against an individual is to punish, the mere presence of a punitive motivation behind prosecutorial action does not render such action unconstitutional. United States v. Contreras, 108 F.3d 1255, 1262 (10th Cir.), cert. denied 118 S. Ct. 116 (1997). However, while it is perfectly acceptable for a prosecutor to "penalize a defendant for violating the law, a prosecutor may not punish a defendant for 'exercising a protected statutory or constitutional right.'" Id. (quoting United States v. Goodwin, 457 U.S. 368, 372 (1982)). Accordingly, in analyzing a claim of prosecutorial vindictiveness, a court must focus on whether "'as a practical matter, there is a realistic or reasonable likelihood of prosecutorial conduct that would not have occurred but for hostility or punitive animus toward the defendant because he exercised his specific legal right.'" Id. (quoting United States v. Raymer, 941 F.2d 1031, 1042 (10th Cir. 1991)). To establish a claim of prosecutorial vindictiveness, "the defendant must prove either (1) actual vindictiveness, or (2) a reasonable likelihood of vindictiveness which then raises a presumption of vindictiveness." Id. If defendant can meet this burden, the prosecution must justify its decision with legitimate, articulable, objective reasons. Id. However, if defendant cannot meet this burden, a reviewing court need not reach the issue of the government's justification. Id. at 1263.

Here, Carter has not asserted actual vindictiveness on the part of the government. Rather, he contends a reasonable likelihood of vindictiveness exists because of the government's refusal to renew its original plea offer after the district court granted his motion for new trial following his original conviction. In support of his contention, Carter relies on Turner v. State, 940 F.2d 1000 (6th Cir. 1992).

In Turner, defendant was indicted on two counts of aggravated kidnaping and one count of felony murder in Tennessee. Prior to trial, the prosecutor offered defendant a two-year prison term in return for a guilty plea to lesser charges, but defendant rejected the offer on the advice of counsel. Defendant was subsequently convicted on all counts and sentenced to life imprisonment for the murder conviction and to forty years for each kidnaping conviction. He was subsequently granted a new trial on the grounds of ineffective assistance of counsel in rejecting the two-year plea offer. Although plea negotiations were reopened, the prosecutor refused to offer less than twenty years' imprisonment. Defendant exhausted his state remedies and then filed a habeas petition in federal court. The court concluded the appropriate remedy for violation of defendant's Sixth Amendment rights would be a new plea hearing during which a rebuttable presumption of prosecutorial vindictiveness would attach to any plea offer in excess of the original two-year offer. The Sixth Circuit affirmed the district

court, concluding there was a realistic likelihood of vindictiveness that demanded application of a rebuttable presumption of vindictiveness to any plea offer in excess of the original two-year offer. In partial support, the majority noted: "The prosecution is unlikely to gain any new insight as to the moral character of the defendant, the nature and extent of the crime, or the defendant's suitability for rehabilitation at the conclusion of trial that it did not already possess from its extended investigation." Id. at 1002.

We conclude the holding in Turner must be confined to its clearly narrow circumstances. Here, unlike in Turner, Carter was not granted a new trial because of ineffective assistance of counsel during plea negotiations. As the granting of a new trial had nothing to do with the plea negotiations, the government was under no obligation to renew its original plea offer (indeed, that offer expired well prior to the beginning of the first trial). Moreover, contrary to the findings in Turner, we conclude the government here was in a different position prior to the second trial than it was prior to the first trial. Specifically, as a result of the convictions in the first trial, the government was well aware it could obtain convictions on both counts of the indictment without Craft's testimony. Thus, there was little reason to offer Carter a "sweetheart" deal. In addition, there was some indication that Carter may have been responsible for the threat on Craft prior to the first trial. Under such circumstances, the government could have realistically changed

-24-

its opinion about Carter's character and/or suitability for rehabilitation and decided it was not appropriate to renew its original plea offer. We conclude no presumption of prosecutorial vindictiveness should attach under the circumstances of this case.

## VI.

We AFFIRM Carter's conviction for conspiracy to possess with intent to distribute cocaine. We REVERSE Carter's conviction for possession with intent to distribute cocaine and REMAND to the district court with directions to vacate the possession with intent to distribute cocaine conviction and for resentencing.