**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 17 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

PERCY LOUIS MORROW,

    Defendant-Appellant.

No. 99-3135
(D.C. No. 98-CR-40040-02-SAC)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **BRORBY**, **EBEL** and **LUCERO**, Circuit Judges.

Defendant-Appellant Percy L. Morrow ("Morrow") appeals his conviction

and sentence on two counts of federal drug offenses in the United States District

Court for the District of Kansas pursuant to 21 U.S.C. §841(a)(1), (b)(1)(C), 18

U.S.C. § 2, and 21 U.S.C. § 846. Morrow argues that (1) the evidence produced

at trial was insufficient to support his convictions and (2) that the trial court erred

---

[*]After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f) and 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This Order and Judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

in admitting evidence of a prior arrest pursuant to 404(b).  Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

**BACKGROUND**

On March 30, 1996, Kansas Highway Patrolman Brian K. Smith observed a Buick Park Avenue vehicle with Illinois license plates exceeding the posted speed limit on Interstate 35.  After pulling the vehicle over, Smith identified the driver of the vehicle as William H. Jones and the two passengers as Jeffrey W. Jones and Ronald L. Gardner.  Upon questioning William Jones about the vehicle, Smith discovered that the car was rented and that it had been rented by Morrow, who was not present in the vehicle.  Additionally, Morrow was the only individual authorized to drive the vehicle.  Smith also discovered from the rental agreement that the car was restricted to the states of Missouri and Illinois.[1]  Based on this information, Smith contacted the car rental company to inform them of the situation.  The rental car company requested that the officer impound the rental car.  The car was thereafter towed to Lebo Garage at Beto Junction, Kansas.

---

[1] During this conversation, William Jones revealed that the group had been driving from St. Louis to Los Angeles.  Because Smith had noticed on the car rental agreement that the car had been rented in St. Louis on March 22, 1996 only eight days earlier, and noticed that William Jones appeared to be extremely nervous, Smith requested consent to search the vehicle.  The car was searched and no contraband was discovered at that time.

Later that same day, at approximately 11:00 a.m., two of the occupants of the vehicle approached Lebo Garage employee Norman Schroeder about regaining possession of the car. Schroeder responded that they would have to get it cleared with the highway patrol. The pair then left.

At approximately 5:30 p.m. that night, the owner of the garage, Doyle Harsch, observed a taxi cab type car pull up to the garage. The cab contained approximately five individuals--two women and three men, two of whom appeared to be the same men who had visited the garage earlier that day. Two of the men requested permission to get their personal belongings out of the rental car. Harsch allowed the group to drive down to the vehicle and remove their personal items. A short while later one of the men in the group came to the garage asking for "sockets." Harsch provided the socket. The man returned two more times, each time requesting a different size socket. After the third time, Harsch became suspicious and went down to the car, where he found the rental car sitting with the trunk open and all four doors open. He also noticed that the hood had been released and was opened to the safety catch. At that point, Harsch informed the group that they would have to leave, and then proceeded to lock up the rental car. The group headed to the garage, where a woman, later identified as Morrow's wife, approached Schroeder and, after informing him that it was her husband who had rented the car, told Schroeder that she did not need any trouble

with the police and offered him $100 for ten minutes alone with the car. Schroeder declined the offer, and after the group left, he telephoned the police.

Once the police arrived, they took a drug dog to the rental car to attempt to locate any controlled substances. The dog failed to give a positive response. The officers then continued their search on the basis of the information provided by Schroeder and Harsch. After noticing tool marks on the screws that held the fan blower motor to the firewall of the car, the officers removed the cover to the blower motor and found a package containing approximately 76 grams of black tar heroin. Testimony was offered at trial that the street value of 76 grams of heroin when cut and sold in St. Louis was approximately $120,000.00.

On April 5, 1996, a female called the Lebo Garage to inform them that she would be coming to pick up the car that evening. Surveillance was set up on the garage and police officers waited for someone to pick up the rental car. Two males arrived at the garage around 10:00 p.m. that night and retrieved the car from the garage. They were subsequently stopped by the police. One of the occupants was identified as Jeffrey Jones and the other occupant was identified by his driver's license as Morrow. The two men were placed under arrest and transported to the Osage County Jail.

Once at the jail, Sergeant Bailiff interviewed the person identified as Morrow. This man stated that he was in fact Jesse Leroy Robinson. Upon further

investigation, it was determined that the man was in fact Jesse Robinson. Robinson testified at trial that on April 5, 1996, he was approached by Morrow and asked whether he wanted to make some money. Morrow asked Robinson to pick up a car for him, and, in return, Morrow would pay him $200. Robinson testified that he went to Morrow's residence and picked up the vehicle's rental papers and Morrow's driver's license. Robinson was then driven to Lebo Garage by Mrs. Morrow and Jeffrey Jones. He was thereafter arrested.

At trial, telephone records were introduced showing telephone calls between the telephone number associated with Morrow's residence in St. Louis and the telephone numbers associated with Lebo Garage, the Kansas Highway Patrol, and the Osage County Jail. The telephone records also identified telephone calls from St. Louis to California that corresponded to the locations of William and Jeffrey Jones and Robert Gardner during their travels in the rental car. In addition, Western Union records were introduced at trial showing that on March 26, 1996, Morrow sent $1000.00 via Western Union wire transfer from St. Louis, Missouri to Jeffrey Jones in Palo Alto, California. The telephone records also showed telephone calls between Morrow's telephone number in St. Louis and telephone numbers in Palo Alto, California during the time period surrounding the wire transfer. Finally, a company representative from the rental car company testified that Morrow was the man who had rented the car in St. Louis. He further

testified that a total of five payments were recorded for the rental car; one through a Mastercard, one through a Visa, and three in cash. The Mastercard belonged to Morrow and Jeanne Morrow, and the Visa belonged to Morrow and Jeanne Allmon.

Morrow was found guilty on one count of possession with intent to distribute approximately 73.52 grams of heroin in violation of 21 U.S.C. §841(a)(1), and one count of conspiracy to possess with intent to distribute in violation of 21 U.S.C. § 846. He was sentenced to a term of imprisonment of 70 months, followed by a term of supervised release of six years.

## DISCUSSION

A. Sufficiency of the Evidence

Morrow first contends that there was insufficient evidence to convict him on both the intent to distribute and conspiracy charges. Morrow argues that the government failed to present evidence as to actual or constructive possession of the drugs, and thus the government failed to prove that Morrow knew about the drugs hidden in the vehicle. "We review the record de novo to determine whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime[s] beyond a reasonable doubt.'" United States v. Dozal, 173 F.3d 787, 797 (10th Cir. 1999) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).

A conviction for possession of heroin with intent to distribute under 21 U.S.C. §841(a)(1) and 18 U.S.C. §2 requires proof that the defendant "(1) possessed a controlled substance; (2) knew he possessed a controlled substance; and (3) intended to distribute the controlled substance." Id. (internal quotations omitted). Possession can be either actual or constructive. Constructive possession exists when a "person knowingly has ownership, dominion or control over the narcotics and the premises where the narcotics are found." United States v. Reece, 86 F.3d 994, 996 (10th Cir. 1996) (internal quotations omitted). Constructive possession has been further defined by this court as "an appreciable ability to guide the destiny of the drug[s]." United States v. Carter, 130 F.3d 1432, 1441 (10th Cir. 1997) (internal quotations omitted) (cert. denied, 523 U.S. 1144 (1998). "In order to establish constructive possession, the government must establish that there was a sufficient nexus between the accused and the drug[s]." Id. (internal quotations omitted).

To prove a conspiracy in violation of 21 U.S.C. § 846, the government must prove beyond a reasonable doubt "(1) an agreement with another person to violate the law, (2) knowledge of the essential objectives of the conspiracy, (3) knowing and voluntary involvement, and (4) interdependence among the alleged conspirators." Carter, 130 F.3d at 1439. A jury may infer an agreement constituting a conspiracy "from the acts of the parties and other circumstantial

evidence indicating concert of action for the accomplishment of a common purpose." Id. (internal quotations omitted). Additionally, a "jury may presume a defendant is a knowing participant in the conspiracy when he . . . acts in furtherance of the objective of the conspiracy." Id. at 1440.

Morrow argues that the government failed to show that he had actual or constructive possession of the drugs and thus failed to prove (1) "knowing possession" for the § 841(a)(1) offense and (2) knowledge of the objective or knowing and voluntary involvement for the § 846 conspiracy charge. The evidence was more than sufficient for a jury to have found Morrow guilty of both charges. There is abundant evidence from which a juror could reasonably infer that Morrow had control over the drugs, had the ability to guide their destiny, and knew the drugs were present in the car. Furthermore there is sufficient evidence based on the acts of the various individuals who were occupants of the car or who attempted to retrieve the car to infer an agreement to conspire and knowledge of the conspiracy. Although Morrow did not make the trip to California, he rented and paid for the car, and was the authorized driver on the car. The wire transfer from St. Louis to California is additional evidence that Morrow financed the trip. Telephone records confirm that the occupants of the car on March 30, 1996, the day the car was stopped in Kansas, telephoned Morrow in St. Louis. Moreover, Morrow's wife drove to Kansas that same day in an attempt to retrieve the car and

even offered money to an employee at the Lebo Garage for ten minutes alone with the vehicle. There is also evidence that on April 5, 1996, Morrow sent a "look alike", Robinson, to Kansas with his driver's license in a further attempt to retrieve the car. Telephone records indicate that Robinson telephoned Morrow from the jail after he was arrested. As the district court found "there is no logical or reasonable explanation for why the defendant himself was so determined to recover the rental car and to incur . . . significant additional costs other than to complete the delivery of the heroin hidden in it." We hold that the evidence amply supported Morrow's conviction on the possession with intent to distribute and the conviction for conspiracy.

B. Prior Arrest

During the trial, evidence of a prior arrest was admitted through the testimony of St. Louis Detective Robert Froelich. Detective Froelich testified that he and three other officers conducted surveillance of Morrow's home for a one hour period on June 3, 1994. During this time period, Detective Froelich observed Morrow make seven short transactions from his front porch in which Morrow received currency in exchange for small objects believed to be heroin. The officer then drove up to the house and observed Morrow remove a plastic bag from his shirt and then empty small capsules of powder. After Morrow was

placed under arrest, the officers found $800 in Morrow's socks. Testing of the substance found in the capsules confirmed that it was heroin.

We review the admission of 404(b) evidence for an abuse of discretion. United States v. Wilson, 107 F.3d 774, 782 (10th Cir. 1997). Rule 404(b) allows for the admission of evidence "concerning particular acts and circumstances that would tend to indicate intent, knowledge, motive, or similar permissible purposes." United States v. Robinson, 978 F.2d 1554, 1559 (10th Cir. 1992). To determine whether 404(b) evidence was properly admitted we look to the four-part test set out in United States v. Huddleston, 485 U.S. 681 (1988). This test requires that:

> (1) the evidence was offered for a proper purposes under Fed. R. Evid. 404(b); (2) the evidence was relevant under Fed. R. Evid. 401; (3) the probative value of the evidence was not substantially outweighed by its potential for unfair prejudice under Fed. R. Evid. 403; and (4) the district court, upon request, instructed the jury to consider the evidence only for the purpose for which it was admitted.

Wilson, 107 F.3d at 782.

The government states that the evidence was properly admitted to show intent to enter into a conspiracy with the intent to distribute. While the government has stated a proper purpose under 404(b), and thus fulfilled the first prong of the Huddleston test, it has failed to satisfy the second prong, namely that the evidence is relevant. This court has stated that "prior narcotics involvement is relevant when that conduct is close in time, highly probative, and similar to the

activity with which the defendant is charged." Wilson, 107 F.3d at 785 (internal quotations omitted). The prior arrest in this case does not meet these requirements for relevance. First, the offenses are nearly two years apart. Second, the activity in 1994 is not factually similar to the activity for which Morrow is currently charged. Although both incidents involved heroin, this is where the similarity ends. In this case, large amounts of heroin were purchased out of state and driven across country. By contrast, the prior arrest dealt with small transactions off Morrow's front porch. We find that the prior conduct is not relevant to show the purposes for which it was admitted. It strains credibility to contend that such factually distinct, temporally distant behavior could have any meaningful bearing on appellant's state of mind with regard to the present offense. The government's assertions to the contrary are both unavailing and improper. The government's primary responsibility is to seek justice–not to stretch the law to obtain convictions.

Although we find the admittance of the prior arrest to be an abuse of discretion, this non-constitutional error only requires reversal if "it had a substantial influence on the outcome or leaves [us] in grave doubt as to whether it had such effect." United States v. Wacker, 72 F.3d 1453, 1473 (10th Cir. 1995) (internal quotations omitted). We review the record de novo to determine whether the error substantially influenced the jury's verdict. Id. After reviewing the

record as a whole, we find substantial evidence of guilt. In addition, the trial court gave a proper limiting instruction in this case. <u>See</u> <u>id.</u> (finding improperly admitted 404(b) evidence harmless based on overwhelming evidence of guilty and a proper limiting instruction by the court). Thus, we conclude that the error in admitting the testimony concerning Morrow's prior arrest had no substantial influence on the jury's verdict and therefore was harmless.

For the foregoing reasons, we AFFIRM Morrow's conviction and sentence. The mandate shall issue forthwith.


ENTERED FOR THE COURT

David M. Ebel
Circuit Judge

- 12 -