FILED
United States Court of Appeals
Tenth Circuit

June 22, 2011

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

ROBERT SUMMERS,

Defendant-Appellant.

No. 10-8092
(D.C. No. 2:09-CR-00099-WFD-2)
(D. Wyo.)

**ORDER AND JUDGMENT**[*]

Before **HOLMES** and **ANDERSON**, Circuit Judges, and **BRORBY**, Senior
Circuit Judge.

Robert Summers was convicted by a jury of one count of conspiracy to

possess with intent to distribute, and to distribute, 500 grams or more of

methamphetamine, in violation of 21 U.S.C. §§ 846 and § 841(a)(1) and

(b)(1)(A). He was sentenced to a mandatory minimum term of imprisonment of

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument. This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

twenty years, ten years of supervised release, a special assessment of $100, and a fine of $1000.

Mr. Summers appeals the district court's judgment and sentence. His appellate counsel has filed a motion to withdraw and supporting brief under *Anders v. California*, 386 U.S. 738, 744 (1967), and 10th Cir. R. 46.4(B)(1), noting that "after careful and conscientious review of the case, discussions with [Mr. Summers], discussion with [Mr. Summers's] trial attorney, and in an exercise of his independent professional judgment," he could "find no meritorious grounds to go forward with an appeal." Aplt. *Anders* Br. at 2 (footnote omitted). In the *Anders* brief, counsel identified four issues Mr. Summers insisted be raised on appeal, which can be reduced to three: (1) that his prosecution in this case for conspiracy violates the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution based on his prior conviction for possession with intent to distribute methamphetamine in 2003; (2) that the government presented insufficient evidence to convict him in this case; and (3) that his sentence was incorrect.

Mr. Summers filed a one-page response to the *Anders* brief. We discern the following relevant objections to his attorney's motion to withdraw: (1) that the attorney who represented him when he pleaded guilty in 2003 to possession with intent to distribute told him that his guilty plea "would take care of anything [he] had done prior to that offense"; (2) that it was improper to admit evidence of any

money sent to his brother and indicted co-conspirator, Todd Summers, because in fact the money was sent by his father, who has the same name as Mr. Summers (i.e., Robert Summers); (3) that the prosecution used the same drugs that formed the basis of his prior conviction; and (4) that his trial counsel provided ineffective assistance in failing to object to the introduction of the money sent to Todd Summers, to call any witnesses, and to object to the use of recorded telephone calls between Mr. Summers and his attorney.

The government declined to file a brief. Based upon our thorough, independent review of the record, *see Anders*, 386 U.S. at 744, we conclude that Mr. Summers raises no non-frivolous issues. His objections numbered one and four above concern whether he received ineffective assistance of counsel with regard to his 2003 conviction or from his trial attorney in the present case. Ineffective assistance claims "should be brought in collateral proceedings, not on direct appeal," unless "the issue was raised before and ruled upon by the district court and a sufficient factual record exists." *United States v. Flood*, 635 F.3d 1255, 1260 (10th Cir. 2011) (quotation and emphasis omitted). Neither condition for review on direct appeal is satisfied here. Further, to the extent Mr. Summers takes issue with his 2003 attorney's performance, he has done so in the wrong case.

As to his objection numbered two above, he has provided no argument in support of his conclusory allegation that any money allegedly sent to Todd

Summers should not have been used at trial because it was in fact sent by his father, who has the same name. Our review of the transcript indicates that one wire transfer of $900 to Todd in Las Vegas was discussed at trial. *See* R., Vol. 3, at 99-100, 219-24. It was sent under the name of "Mike Snow," which one of the prosecution's witnesses, Michael Wheeler, claimed was an alias he used. *Id.* at 100. Thus, we are at a loss to understand Mr. Summers's argument on this point.

Next, we construe Mr. Summers's objection numbered three above—that his prosecution was based on the same drugs that formed the basis of his 2003 conviction—as an argument that he was tried in violation of the Double Jeopardy Clause. However, "the law is well settled that commission of a substantive offense and a conspiracy to commit it are separate crimes because the essence of a conspiracy charge is an agreement to commit a substantive offense." *United States v. Johnson*, 977 F.2d 1360, 1371 (10th Cir. 1992) (brackets, internal quotation marks, and emphasis omitted). Further, with respect to drug trafficking offenses, "Congress intended to allow imposition of separate sentences for a conspiracy conviction under 21 U.S.C. § 846 and for the substantive drug offenses that form the object of the conspiracy." *Id.* Therefore, assuming Mr. Summers's 2003 possession-with-intent-to-distribute conviction involved some of the same methamphetamine at issue in this case, it was not a violation of the Double Jeopardy Clause to try Mr. Summers on the conspiracy charge here.

-4-

In addition to Mr. Summers's specific objections, we have conducted a thorough, independent examination of the record in order to consider the other issues raised in the *Anders* brief, namely, sufficiency of the evidence and the propriety of the sentence. We address each issue in turn.

We review the sufficiency of the evidence de novo, viewing the evidence and drawing all reasonable inferences in favor of the jury's verdict. *United States v. Wright*, 506 F.3d 1293, 1297 (10th Cir. 2007). A conviction may be reversed only if "no reasonable juror could have reached the disputed verdict." *United States v. Carter*, 130 F.3d 1432, 1439 (10th Cir. 1997). "To prove a conspiracy, the government must show (1) that two or more persons agreed to violate the law; (2) that the defendant knew the essential objectives of the conspiracy; (3) that the defendant knowingly and voluntarily took part in the conspiracy; and (4) that the conspirators were interdependent." *Wright*, 506 F.3d at 1297-98. "Interdependence exists where coconspirators intend to act together for their shared mutual benefit within the scope of the conspiracy charged." *United States v. Caldwell*, 589 F.3d 1323, 1329 (10th Cir. 2009) (brackets and internal quotation marks omitted). A "jury can infer an agreement constituting a conspiracy from the acts of the parties and other circumstantial evidence indicating concert of action for the accomplishment of a common purpose." *Carter*, 130 F.3d at 1439 (internal quotation marks omitted).

Our review indicates that the evidence was more than sufficient to support Mr. Summers's conspiracy conviction and the drug quantity (500 grams or more) found by the jury. The evidence showed that Mr. Summers did more than merely associate with others who conspired to distribute methamphetamine; he agreed with his brother, Todd; his girlfriend, Arien Adams; and Michael Wheeler, to obtain methamphetamine in substantial quantities and resell it, often in smaller amounts.

Ms. Adams testified that she began buying small amounts of methamphetamine (between a half gram and one gram) from Mr. Summers in 2001. R., Vol. 3, at 130-31. Soon thereafter, she and Mr. Summers became romantically involved. *Id.* at 131. Later that year, Mr. Summers, Todd Summers, and Ms. Adams drove from Wyoming, where they lived, to California to visit someone Ms. Adams knew who was a source of methamphetamine. Todd purchased several sandwich-sized bags of methamphetamine. *Id.* at 134-37. After returning to Wyoming, Todd gave Mr. Summers one of the baggies, which Ms. Adams estimated to contain a couple of ounces. *Id.* at 142. Mr. Summers kept some for personal use and split some of the drugs into small quantities, which he and Ms. Adams sold. *Id.* at 142-45. Ms. Adams testified that between 2001 and 2003, she went with Mr. Summers to pick up methamphetamine from Todd approximately two dozen times, in quantities between an eighth of an ounce and two or three ounces, and that they would sell some of it and use some of it.

*Id.* at 146-48. Sometimes Todd would front the drugs to them. *Id.* at 146. One of the people they sold to was Mr. Wheeler. *Id.* at 154. On one occasion, Ms. Adams, Mr. Summers, and Mr. Wheeler visited Todd to purchase methamphetamine. *Id.* at 153-55. Upon returning home, Mr. Summers and Mr. Wheeler each took some of the drugs, and Mr. Summers split his up and sold it. *Id.* at 155. On other occasions, Mr. Summers also went alone to get methamphetamine from Todd, selling some of it and using some of it. *Id.* at 158.

Mr. Wheeler also testified about his relationship with Mr. Summers. He stated that he was purchasing methamphetamine from another dealer, who introduced Mr. Wheeler to his supplier, Mr. Summers, in 2002. *Id.* at 66-67. Mr. Wheeler then began buying quarter ounces of methamphetamine directly from Mr. Summers. *Id.* at 71. Later, Mr. Wheeler bought two ounces of methamphetamine from Mr. Summers on approximately ten occasions. *Id.* Mr. Wheeler also testified that Mr. Summers and Ms. Adams took him to purchase a half-ounce of methamphetamine from Todd, some of which he sold. *Id.* at 77-79. On that occasion, Mr. Summers obtained 1.5 ounces of methamphetamine for himself. *Id.* at 78. Eventually, Mr. Summers took Mr. Wheeler to purchase one to four ounces of methamphetamine from Todd (on average two ounces each time) on twenty-five or thirty different occasions. *Id.* at 79, 82. Mr. Summers made a profit on each of these transactions. *Id.* at 79-80. Mr. Wheeler also testified that on December 31, 2005, he fronted an ounce of

methamphetamine to Mr. Summers after he and Mr. Summers telephoned Todd to ensure that Todd would replace the ounce. *Id.* at 89-95. Mr. Wheeler then witnessed Mr. Summers sell that ounce to another person, who then divided it into smaller quantities and sold it at a New Years' Eve party. *Id.* at 89, 92-96.

Ms. Darlene Frankfurth offered testimony about her dealings with Mr. Summers in 2004 or 2005. In addition to selling methamphetamine to Mr. Summers from time to time, Mr. Summers would sell her anywhere from a gram to an ounce, most of which she would resell. *Id.* at 191, 193. He sold her an ounce four or five times. *Id.* at 192. Mr. Summers told Ms. Frankfurth that he was getting the drugs from his brother. *Id.* at 193.

Further, the prosecution presented an expert in the field of narcotics trafficking, who provided a summary of the drug quantities involved based on the testimony of the other witnesses. *Id.* at 225-29. Excluding certain large quantities involved when Mr. Wheeler began dealing with Todd Summers directly,[1] the expert's testimony was that 560 grams were attributable to the ten times Mr. Wheeler bought two ounces from Mr. Summers, *id.* at 225-26; 1400

---

[1]     Mr. Wheeler testified that by mid-2003, he was dealing with Todd Summers directly, and Todd continued to obtain his drugs in California. At sentencing, the district court disregarded large quantities of methamphetamine related to those transactions. Because our review of the record indicates that there was sufficient evidence Mr. Summers conspired to distribute in excess of 500 grams of methamphetamine even excluding these amounts, we have not recited the details of those transactions.

grams were attributable to the twenty-five times Mr. Wheeler and Mr. Summers obtained an average of two ounces from Todd, *id.* at 226; 28 grams were attributable to the New Year's Eve 2005 transaction, *id.* at 227; 56 grams were attributable to the trip Mr. Summers, Ms. Adams, and Todd Summers took to California in 2001, *id.* at 228; 81.6 grams were attributable to the two dozen trips Mr. Summers and Ms. Adams took to obtain at least an eighth of an ounce from Todd, *id.* at 228; 21 grams were attributable to Ms. Adams's six solo trips to obtain at least an eighth of an ounce from Todd, *id.* at 228; and 112 grams were attributable to Ms. Frankfurth's purchases from Mr. Summers, *id.* at 229. By our count, these quantities add up to 2258.6 grams.

In short, it is beyond doubt that there was sufficient evidence that Mr. Summers acted interdependently with at least one other person in furtherance of the sale of 500 grams or more of methamphetamine. Thus, we see no non-frivolous issue regarding the sufficiency of the evidence.

We now turn to the propriety of Mr. Summers's sentence. Mr. Summers's sentence was undoubtedly proper under 21 U.S.C. § 841(b)(1)(A)(viii), which requires a mandatory minimum term of imprisonment of "20 years" (i.e., 240 months) when an individual is convicted for conspiracy to distribute "500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers" following "a prior

conviction for a felony drug offense."[2]  As detailed above, the evidence was sufficient to support the finding that Mr. Summers conspired to distribute 500 grams or more of methamphetamine, and it is undisputed that he had a prior conviction for a felony drug offense—his 2003 conviction for possession of methamphetamine with intent to distribute.  Moreover, the district court sentenced Mr. Summers at the lowest end of the Sentencing Guidelines range, which was 240-293 months, stating that "the sentence . . . is sufficient but not greater than necessary to meet the purposes of sentencing" set forth in 18 U.S.C. § 3553(a). R., Vol. 3, at 686.

In sum, we are confident that Mr. Summers's counsel is correct:  there are no non-frivolous issues to present on appeal.  Consequently, we GRANT counsel's motion to withdraw and AFFIRM the district court's judgment and sentence.  Mr. Summers's motion to proceed on appeal pro se is denied as moot.

Entered for the Court

Jerome A. Holmes
Circuit Judge

---

[2]  Although § 841 prescribes punishments for substantive drug offenses, a conspiracy to commit such an offense is subject to the same penalties.  *See* 21 U.S.C. § 846.